IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| SHAWNA D., <br><br>             Plaintiff, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>             Defendant. | CV 25-73-GF-KLD <br><br><br> ORDER |

Plaintiff, who is proceeding pro se, brings this action under 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., 1381 et seq.

## I.      Procedural Background

Plaintiff protectively filed applications for benefits on April 20, 2022, alleging disability since March 21, 2022, based on physical and mental impairments. (Doc. 9 at 228-29, 230-35). Plaintiff's claim was denied initially and on reconsideration. (Doc. 9 at 87-97, 112-123). Plaintiff was represented by an attorney during an administrative hearing in May 2024, and in July 2024 the ALJ

issued a decision denying Plaintiff's applications for benefits. (Doc. 9 at 34-47, 53-85). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the agency's final decision for purposes of judicial review. (Doc. 9 at 6-11). Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

## II.    Legal Standards

### A.    Standard of Review

42 U.S.C. § 405(g) provides a limited waiver of sovereign immunity, allowing for judicial review of social security benefit determinations after a final decision of the Commissioner made after a hearing. *See Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A court may set aside the Commissioner's decision "only if it is not supported by substantial evidence or is based on legal error." *Treichler*, 775 F.3d at 1098 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). "Where evidence is susceptible for more than one rational interpretation," the court must uphold the ALJ's decision. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "Finally, the court will not reverse an

ALJ's decision for harmless error, which exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)).

### B.     Disability Determination

To qualify for disability benefits under the Social Security Act, a claimant bears the burden of proving that (1) she suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more; and (2) the impairment renders the claimant incapable of performing past relevant work or any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); *see also Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520 and 416.920. If a claimant is found to be "disabled" or "not disabled" at any step, the ALJ need not proceed further. *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005). The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i). If so, then the claimant is not disabled within the meaning of the Social Security Act. At step two, the ALJ must determine whether the claimant has any impairments, singly or in combination, that qualify as severe under the regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will proceed to step three. At step three the ALJ compares the claimant's impairments to the impairments listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii). If the ALJ finds at step three that the claimant's impairments meet or equal the criteria of a listed impairment, then the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

If the ALJ proceeds beyond step three, he must assess the claimant's residual functional capacity. The claimant's residual functional capacity is an assessment of the work-related physical and mental activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling (SSR) 96-8p. The assessment of a claimant's residual functional capacity is a critical part of steps four and five of the sequential evaluation processes.

4

At step four, the ALJ considers whether the claimant retains the residual functional capacity to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(4)(v). The ALJ may satisfy this burden through the testimony of a vocational expert or by referring to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the ALJ meets this burden, the claimant is not disabled.

## III.   **Discussion**

The ALJ followed the five-step sequential process in evaluating Plaintiff's claim. At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2023, and had not engaged in substantial activity since her alleged onset date of March 21, 2022. (Doc. 9 at 36). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, mild degenerative disc disease of the cervical spine, osteoarthritis of the right knee status post total knee arthroplasty, early degenerative joint disease/osteoarthritis of the left knee, asthma, status post-

acute lacunar ischemic stroke, irritable bowel syndrome, gastroesophageal reflux disease, morbid obesity, neurocognitive dementia, a depressive, bipolar, or related disorder, an anxiety disorder, borderline personality disorder, and post-traumatic stress disorder. (Doc. 9 at 36-37). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment described in the listed impairments. (Doc. 9 at 38).

The ALJ then found that Plaintiff had the residual functional capacity to perform a reduced range of light work as follows:

> [C]laimant can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds. She can stand and/or walk 4 hours and sit 6 hours of an 8-hour workday. The claimant can never climb ladders, ropes, or scaffolds, and she can occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She can tolerate frequent exposure to extreme cold, vibration, and pulmonary irritants, but she can have no exposure to hazards, including unprotected heights or heavy machinery. Mentally, she is limited to understanding, remembering, carrying out, maintaining attention and concentration on, and persisting at no more than simple tasks, defined specifically as those job duties that can be learned in up to 30 days' time. She can sustain only ordinary routines and make no more than simple, work-related decisions. She can tolerate no more than occasional interaction with coworkers, supervisors, and the general public.

(Doc. 9 at 41). At step four, the ALJ determined that Plaintiff did not have past relevant work. (Doc. 9 at 46). At step five, the ALJ found based on the vocational expert's testimony that other jobs exist in significant numbers in the national economy that Plaintiff could perform, including work as a production assembler, garment sorter, and bench assembler. (Doc. 9 at 47).

Although Plaintiff was represented by counsel in the administrative proceedings, she is proceeding pro se and in forma pauperis in this action for judicial review. On March 27, 2026, Plaintiff submitted a filing that the Court has construed as an opening brief challenging the ALJ's decision. (Docs. 14 and 15). Plaintiff's filing consists mainly of two Mental Impairment Questionnaires dated October 20, 2025—one from Advanced Registered Practical Nurse (ARPN) Kyle Young and the other from Licensed Clinical Professional Counselor (LCPC) Angi DiSalvo. (Doc. 14 at 2-19). Plaintiff's submission also includes an October 22, 2025 "to whom it may concern" letter from ARPN Young stating that the Diagnostic and Statistical Manual of Mental Disorders has been updated twice since the DSM-IV was discontinued. (Doc. 14 at 1). On April 24, 2026, Plaintiff filed additional evidence consisting of: (1) an April 22, 2026, mental impairment questionnaire from Dr. Michele Marber; (2) a list of Plaintiff's medications also dated April 22, 2026; and (3) a December 2, 2025, physical Functional Capacity Evaluation completed by Physical Therapist (PT) Dean Orvis. (Doc. 16). Although Plaintiff does not provide any narrative argument, her submissions can be liberally construed as generally challenging the ALJ's evaluation of her mental and physical impairments.

The Commissioner responded to Plaintiff's filings on May 11, 2026. (Doc. 1). The Commissioner argues that the ALJ's decision is supported by substantial

evidence, and the medical opinions of ARPN Young, KCPC DiSalvo, Dr. Marber, and PT Orvis should not be considered because they are not part of the administrative record and post-date the ALJ's decision by more than a year.

### A.      Substantial evidence supports the ALJ's decision

The ALJ thoroughly considered the medical records, medical opinions, and prior administrative medical findings when assessing Plaintiff's residual functional capacity. With respect to Plaintiff's mental impairments, the ALJ cited mental health treatment records reflecting treatment for PTSD, anxiety, depression, and borderline personality disorder. (Doc. 9 at 44, citing Doc. 9 at 1812-1892, 1970-1980). The ALJ found that Plaintiff's mental health symptoms were generally triggered by situational stressors, and while Plaintiff's mental status exams showed some intermittent abnormalities, more often her mental status exams showed only mild or benign findings. (Doc. 9 at 44, citing Doc. 9 at 605, 652, 718, 790, 1601, 1624, 1630, 1640, 1644, 1647, 1661, 1665, 1674, 1676, 1683, 1781, 1800, 1816-17, 1835-36, 1845-46, 1895, 1899, 1923, 1926, 1941, 1960, 1991, 2003, 2101). And while Plaintiff testified that she has difficulty getting along with others and loses her temper easily (Doc. 9 at 70-71), the ALJ cited evidence that Plaintiff was able to care for her grandchildren several times a week and did "a lot of visiting with friends." (Doc. 9 at 45, citing Doc. 9 at 1582-83).

The ALJ also considered the medical opinions in the record related to Plaintiff's mental impairments, which suggested Plaintiff would be capable of some level of work. (Doc. 9 at 45, citing Doc. 9 at 87-97, 112-123, 1581-1583). In January 2023, Dr. Mark Mozer completed a mental status evaluation finding that Plaintiff "would be somewhat limited learning, remembering, and applying information on anything other than an unskilled level" and noted that she had done housekeeping work successfully in the past, holding jobs for as long as four years. (Doc. 9 at 1583). Dr. Mozer found that from a psychological standpoint, Plaintiff would be capable doing the type of work she had done in the past. (Doc. 9 at 1583). The ALJ reasonably found that Dr. Mozer's opinion was supported by his examination findings and interpreted it as limiting Plaintiff to unskilled work. (Doc. 9 at 45).

The ALJ also relied on the prior administrative findings of Dr. Stacy Koutrakos, who found based on her review of the record that Plaintiff "retain[ed] the ability to understand, remember, and persist at simple tasks in setting with brief and superficial interactions with routine work changes." (Doc. 9 at 45, citing Doc. 9 at 95). The ALJ reasonably found that Dr. Koutrakos's "endorsement of limitation to simple work with limited interaction with others and limited routine changes [was] more consistent with the record as a whole," than the opinion of the

other consulting psychologist, Dr. Mark Berkowitz, and incorporated equivalent limitations into the residual functional capacity assessment. (Doc. 9 at 41, 45).

The ALJ also considered the treatment records and medical opinions regarding Plaintiff's physical impairments, including degenerative disc disease, knee osteoarthritis, and status post-acute lacunar ischemic stroke. (Doc. 9 at 36, 42-44). For example, the ALJ noted that Plaintiff had a right knee replacement in March 2022, and records from April 2022 through January 2023 generally indicated that the surgery was successful and she was slowly improving, but acknowledges she was having some ongoing pain and gait antalgia and used a walker for a period. (Doc. 9 at 42, citing Doc. 9 at 569, 576, 583, 589, 605, 1170-71, 1635-36, 1652). By March 2023, the ALJ noted, Plaintiff's physical exams, including exams of the right knee, were within normal limits, she reported occasionally walking her dog, said she was "very happy" with the outcome of her right knee replacement, which showed excellent range of motion and no instability, and she was encouraged to increase her activity. (Doc. 9 at 42, citing Doc. 9 at 1411, 1461, 1601).

Addressing Plaintiff's back impairments, the ALJ considered an April 2022 MRI of Plaintiff's lumbar spine, noting that it showed multilevel degenerative disc disease but cervical spine imaging at that time showed only minor degenerative changes. (Doc. 9 at 42, citing Doc. 9 at 770-72, 775). The ALJ observed that back

10

pain complaints were "relatively sparse in the records during the alleged disability period" and Plaintiff did not have any significant ongoing neck pain issues. (Doc. 9 at 43). The ALJ noted that Plaintiff had a September 2023 visit during which she reported back pain that had "started spontaneously" the previous day while walking (Doc. 9 at 1921) and she showed tenderness in her lower back (Doc. 9 at 1923), but that records later in 2023 and in 2024 did not show significant ongoing back complaints or exam findings. (Doc. 9 at 43, citing Doc. 9 at 1893-2033).

The ALJ also considered medical records showing that Plaintiff had an acute lacunar stroke in April 2022 and was admitted to the hospital for two days before being discharged to inpatient rehabilitation. (Doc. 9 at 42, citing Doc. 9 at 717-18, 774). The ALJ noted that Plaintiff was discharged from rehabilitation approximately two weeks later, and a February 2023 record discussing her stroke recovery reflected that Plaintiff had participated in physical therapy and was denying any further stroke like events, chest pain, dizziness, headache or confusion. (Doc. 9 at 42, citing Doc. 9 at 692, 1626).

The ALJ is responsible for weighing the medical opinions in the record and resolving any conflicts in the medical evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971). Even if the record could support a different result, the Court must affirm the ALJ's findings if they are supported by substantial evidence. *See Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) ("[W]e must uphold the

11

ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

Here, the ALJ reasonably weighed the medical evidence of record and limited Plaintiff to a reduced range of light work as a result of her physical and mental impairments. Plaintiff does not raise any specific challenge to the ALJ's evaluation of the treatment records or medical opinions in the record. Even if the evidence could be subject to more than one rational interpretation, the ALJ's assessment of Plaintiff's residual functional capacity is supported by substantial evidence of record.

**B.     Additional evidence outside the administrative record will not be considered**

Judicial review of the Commissioner's decision is based "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). "Although the statute permits a reviewing court to remand a case to the Commissioner and order the Commissioner to take new evidence, it may do so only if the new evidence is material and if there is good cause for the failure to incorporate the evidence at a prior proceeding; to be material, the evidence must be relevant to the claimant's condition at the of the hearing before the ALJ." *McMurray v. Kijakazi*, 2022 WL 22288154, at *6 (D. Mont. Mar. 23, 2022) (citing *Wainright v. Sec'y of Health & Hum. Servs.*, 939 F.2d 680, 682083 (9th Cir. 1991). "A claimant does not meet the good cause requirement merely by obtaining a more favorable report one his or her

12

claim is denied." *Mayes v. Massanari*, 276 F.3d 453, 463 (9th Cir. 2001).

"If a claimant experiences worsening symptoms or the development of new symptoms after the date of the administrative hearing, the proper course is to file a new application for Social Security Disability benefits." *McMurray*, 2022 WL 22288154, at *6 (citing *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 n.1 (9th Cir. 2001); *see also Jessie C.B. v. Berryhill*, 2019 WL 1293604, at *5 (D. Mont. Mar. 21, 2019) ("To the extent Plaintiff submitted medical records generated after the ALJ's decision in the normal course of treatment suggesting that her condition may have worsened, Plaintiff's remedy is to file a new application for benefits."); *Ferrari v. Berryhill*, 2017 WL 3567970, at *6 (D. Mont. Aug. 17, 2017) (declining to consider evidence the Appeal Council did not review).

Here, the additional evidence that Plaintiff offers in support of her request for review of the ALJ's decision cannot be considered. As described above, Plaintiff has submitted mental impairment questionnaires from ARPN Young and LCPC DiSalvo that are both dated October 20, 2025, and one from Dr. Marber that is dated April 22, 2026. (Doc. 14 at 2-19). Plaintiff has also submitted a physical functional capacity evaluation from PT Orvis dated December 2, 2025. (Doc. 16). All of the evidence Plaintiff has provided to this Court post-dates the ALJ's decision by more than a year. The evidence was not submitted to the Appeals Council and is not part of the Certified Administrative Record. The fact that

Plaintiff may have obtained more favorable opinions after the date of the ALJ's decision is not sufficient to meet the good cause requirement. *See Mayes*, 276 F.3d at 463. Additionally, Plaintiff has not shown that this evidence relates back to the relevant period. Because the additional evidence provided by Plaintiff is not part of the administrative record and Plaintiff has not satisfied the good cause requirement for considering new evidence, the Court will not consider it. As discussed above, the ALJ's decision is supported by substantial evidence, and Plaintiff has not shown that the ALJ legally erred in denying her claim.

## IV.    Conclusion

For the reasons discussed above, the Court finds the ALJ's decision denying Plaintiff's claims for disability insurance benefits and supplemental security is supported by substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is AFFIRMED.

DATED this 13th day of August, 2026.

_____
Kathleen L. DeSoto
United States Magistrate Judge

14